# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MARION UTER, et al., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Case No.: 1:04-279-BH-C |
| | ) |
| LINDA PEACOCK, et al., | ) |
| | ) |
| Defendant, | ) |

## ORDER

This matter is before the Court on Defendant/Counterclaim Plaintiff Peacock's Motion (Doc. 89) for Partial Summary Judgment. Plaintiff/Counterclaim Defendant Uter has filed a Response Memorandum (Doc. 135) and Peacock, in turn, submitted a Reply (Doc. 151). The parties presented their issues in Oral Argument before the Court on July 19, 2004.

Peacock seeks this Court to issue Summary Judgment in her favor for the following claims: (1) Uter's Claim for Breach of Contract, (2) Uter's claim alleging Fraud, (3) her Counterclaim for Breach of Contract and (4) her Counterclaim for Indemnification. (Peacock Br. Supp. Mot. Summ. J., Doc. 90, p. 10). For the following reasons, the Court finds that Defendant/Counterclaim Plaintiff Peacock's Motion is **due to be GRANTED in part and DENIED in part**.

**RELEVANT FACTS**[1]

1. Uter and Peacock were married in Bay Minette, Alabama on August 10, 2001. A scant three months later, the marriage ended in divorce, with the parties executing a Divorce Settlement Agreement on November 19, 2001. Judgment of Divorce was entered in the Circuit Court of Baldwin County in January 2002. (*See* Peacock Aff., Doc. 91-2, ¶ 3).

2. For some time after their marriage, the parties maintained business relations as members of three Alabama limited liability corporations, including LMUI, LLC; LMM, LLC, and LMPC, LLC. *Id.* at ¶ 4.

3. On July 10, 2003, the parties entered into a written agreement to disentangle and dissolve their business relationship. *Id.* at ¶ 10.; July 10 Agreement, Doc. 91-4.

4. On July 16, 2003, the parties entered into another agreement which they have titled as a "Supplement" to the July 10 agreement. *Id.* at ¶ 11; July 16 Supplement, Doc. 91-5.

5. All of the claims presented for summary judgment determination are based on the obligations contained in these contracts. (*See* Peacock Br. Supp. Mot. Summ. J.)

6. **Uter's Complaint**

    a. *Breach of Contract*

        i. In his Complaint, Uter alleges that the July 10 agreement provided that Peacock would allow a CPA to conduct an audit of her financial records relating to LMUI, LLC. (Uter Compl., Doc. 1-3, ¶¶ 16 & 20).

        ii. Uter interpreted the contract as stating that he was not required to execute a first

---

[1] As the Court has noted in earlier Orders, a full and complete recitation of the facts of this case would be both unnecessarily lengthy and contentious. Therefore, the Court has only included those facts it deems relevant to the determination of the issues before us.

                mortgage on real property located at County Road 12 (hereinafter, "County Road 12 Property") in Baldwin County, Alabama until this accounting was completed. *Id.* at ¶16.

      iii.    Uter claims that Peacock is liable for Breach of Contract for failing to provide the accounting as provided under paragraph two (2) of the July 10 agreement. *Id.* at ¶21.

   b.   ***Fraud***

      i.    Uter also alleges Peacock represented that she would grant the designated accounting firm (Grant, Sanders and Taylor, CPA PC) access to all financial records of LMUI, LLC and LMM, LLC in order to complete a corporate audit of the companies. *Id.* at ¶27.

      ii.    Uter submits that this representation was fraudulent. Peacock knew or should have known it was false and he relied on such representations to his detriment. *Id.* at ¶ 28.

7.   **Peacock's Counterclaims**[2]

   a.   ***Breach of Contract***

      i.    Peacock claims that pursuant to the July 10 and July 16 agreements, she assigned her membership interests in LMUI, LLC in consideration for Uter paying her $260,000. (Peacock Countercl., Doc. 88, ¶23).

      ii.    However, she also claims that Uter, in the July 16 agreement, admitted that he was

---

[2] Peacock has filed four counterclaims (Peacock's Countercl., Doc. 88, p. 12) against Uter in this matter, however, only two are at issue in her Motion for Partial Summary Judgment.

        unable to meet his obligation under July 10 agreement to pay her an additional $250,000. (Peacock Br. Supp. Mot. Summ. J. at 6-7).

   iii.   Therefore, according to Peacock, Uter was required under the July 16 agreement to redeem the County Road 12 Property from foreclosure and grant her a first mortgage in the amount of $250,000 on or before July 23, 2003 to secure this monetary obligation. (Peacock Countercl. at ¶ 24).

   iv.   Peacock further asserts that the July 16 agreement also provides that, in any event, the mortgage of $250,000, together with interest at the rate of five (5) percent per annum, would become due and payable on July 16, 2004. *Id*. at ¶25.

   v.   Under the agreements, Peacock alleges, Uter was to pay her $100,000 upon the sale of eighty-four (84) acres of real estate located in Gulf Shores, Alabama. *Id*. at ¶26.

   vi.   The agreements also state, according to Peacock, that Uter would provide certain releases in her favor. *Id*. at ¶27.

   vii.   Peacock submits that prior to Uter's initial breaches of the agreements, she had fully performed the obligations imposed on her under the agreements. *Id*. at ¶28.

   viii.   Peacock contends that Uter's failure to meet any of these obligations under the agreement amounts to a Breach of Contract. *Id*. at ¶29.

b.   ***Indemnification***

   i.   Peacock asserts that the agreements expressly provide that Uter would release and indemnify Peacock for, among other matters/claims, the claims of relief contained in Uter's complaint. *Id*. at ¶ 35.

    ii.    Peacock submits that Uter had actual knowledge of these indemnity provisions and violated them by filing his complaint. *Id.* at ¶36.

    iii.    Such disregard of the contracted for indemnity provisions, Peacock alleges, has cost her damages in the form of attorney's fees, litigation expenses and costs in defense of his complaint. *Id.* at ¶ 37.

## LEGAL ANALYSIS

### *Summary Judgment Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir. 2004) (citing *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

The moving party bears "the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of

material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof at trial, the moving party may discharge its "initial responsibility" by showing that there is an absence of evidence to support the nonmoving party's case or by showing that the nonmoving party will be unable to prove its case at trial. *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir. 1991). To survive summary judgment, the nonmoving party bearing the ultimate burden of proof at trial must then come forward with evidence sufficient to withstand a directed verdict motion. *Fitzpatrick v. Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993).

On summary judgment, "the district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences ... in his favor." *Four Parcels*, 941 F.2d at 1428 (internal quotations and citations omitted).

### *Breach of Contract Claims*

As stated above, both parties base their claims of Breach of Contract on the obligations assigned to each party under the July 10 and July 16 contracts.[3]  More specifically, the crux of the disagreement between Uter and Peacock centers on the portions of the agreements concerning Uter's obligation to redeem the County Road 12 Property and either foreclose on it and pay $250,000 to an escrow agent or mortgage it in the amount of $250,000 to Peacock and Peacock's obligation to allow the designated accountants access to her financial records so that they may complete a full, complete and net accounting of Peacock, Uter and the LLC's expenditures.

---

[3] Though Uter does not mention the July 16 agreement in his Complaint, he does note in his Response (Doc. 135) to the Motion for Summary Judgment that the claims are centered on the two documents signed in July 2003.  Furthermore, Uter never disputes, in any of his pleadings, the validity of the July 16 agreement.

*July 10 Agreement*

Paragraph 1(d) of the July 10 agreement states,

Uter will cause the County Road 12 property to be redeemed from foreclosure and deliver to a trust account maintained by a mutually acceptable third party ("Escrow Agent") the sum of $250,000 to be held and disbursed in accordance with paragraph 2 below.

Paragraph 2 of the agreement further specifies that,

The $250,000.00 placed in the trust account pursuant to paragraph 1(d) above shall be paid to Peacock no later than July 23, 2003, unless prior to then Uter shall deliver a written report from a local certified public accounting firm acceptable to both parties certifying that an accounting of the various expenditures by or in connection with the aforesaid LLC's, the personal funds of Peacock, and/or the personal funds of Uter shows that LLC or Uter funds were paid for Peacock's personal expenses; to the extent, if any, that said CPA firm certifies that LLC funds or Uter funds expended for Ms. Peacock's personal benefit exceed funds expended for Uter's personal expenses, the benefit of either of his sons, or any venture being pursued by Uter, such excess shall be paid to Uter, with the balance to be paid to Peacock.  Peacock shall have fifteen (15) days following her receipt of such certification in which to challenge such findings by written notice to the Escrow Agent and if she gives such notice, no funds shall be disbursed from said account until the dispute has been resolved in court or otherwise. Payment of the $250,000.00 may be deferred for 12 months if, by July 23, 2003 both the County Road 12 property is redeemed and Peacock is granted a first mortgage on such property to secure said $250,00.00 which shall bear interest at the rate of 5% per year.

*July 16 Agreement*

Six days later, the parties again convened to discuss the terms and obligations of the July 10 agreement. As its language states, the July 16 agreement was meant to amend the July 10 agreement. Peacock was prepared to meet her obligations under the July 10 agreement, however, Uter could not satisfy his obligations under paragraphs 1(d), 1(g), and 1(h).[4] In paragraph C of the July 16 agreement,

---

[4] Uter did meet his obligation under paragraph 1(a) of the July 10 agreement to pay $260,000 to Peacock and granted the release required under paragraph 1(c). In consideration for the satisfaction of these terms, Peacock assigned to Uter her membership interest in LMUI, LLC only.  Peacock,

the parties reference and modify their obligations under paragraphs 1(d) and 2 of the earlier agreement. Recognizing that Uter was unable to redeem and foreclose on the County Road 12 Property and make a $250,000 payment to Peacock, the parties contracted:

> Under Paragraph 1(d) and paragraph 2 of the Agreement, on or before July 23, 2003, Uter shall cause the land for the 34 undeveloped lots on County Road 12 … *to be redeemed and mortgaged to Peacock as a first mortgage;* the first mortgage shall secure Peacock's right to $250,000.00; *Peacock shall have the right to foreclose said mortgage 15 days following a review and certification by the CPA firm* of Sanders & Taylor, P.C. that a full, complete and net accounting as contemplated by paragraph 2 of the Agreement shows that Peacock is entitled to said sum. In the event that the CPA firm certifies that Peacock is entitled to less than the $250,000, then Peacock may proceed within 15 days to foreclose said mortgage to recover a sum equal to the sum certified by the CPA firm as being due to Peacock. Either party may challenge such accounting within 14 days of the issuance of said written and signed accounting report through invoking binding arbitration ... Any sum as is determined by the arbitrator to be due Peacock shall be due paid within 20 days of the arbitrator's decision, and failing such payment, Peacock may proceed to foreclose the mortgage. Either party may invoke arbitration if the accounting report is not complete by August 31, 2003. Additionally, *Peacock shall not be deemed entitled to the full $250,000 or any portion thereof or have the right to foreclose on said mortgage until a CPA certification on the aforesaid net accounting is delivered* or until the arbitrator's decision. *Provided in all events if the dispute is not otherwise resolved by July 16, 2004, the mortgage of $250,000.00 together with interest at the rate of 5% per year, shall become due and payable at such time.*

(emphasis added)

### *Contract Construction*

Alabama law is clear that contracts whose language is clear in expression and unambiguous as to its intention cannot be altered by the court and leave no room for judicial construction. *Arthur Rutenberg Homes, Inc. v. Norris*, 804 So.2d 180, 185-86 (Ala. 2001). "A court should give the terms of the

---

however, did not assign her interests in LMM, LLC or Hampton Oaks, LLC as laid out in paragraph 1(b) or effect the release provided for in paragraph 1(e). Though able to perform such obligations, Peacock withheld them as consideration for Uter's performance of his obligations under paragraphs 1(d), (g) and (h) of the July 10 agreement.

agreement their clear and plain meaning and should presume that the parties intended what the terms of the agreement clearly state." *Turner v. West Ridge Apartments, Inc.*, 893 So.2d 332, 335 (Ala. 2004)(quoting *Ex parte Dan Tucker Auto Sales, Inc.*, 718 So.2d 33, 36 (Ala.1998)). Furthermore, courts are generally not permitted to consider extrinsic evidence when no facial ambiguity is present. *See Rime-Shatten Dev. Co. v. Birmingham Cable Comm.*, 569 So.2d 332, 334 (Ala. 1990).

However, "it is a well-established exception to the general rule regarding use of parol evidence in the construction of contracts ... that matters collateral to the written terms of the contract may make the meaning of that contract uncertain." *J.I.T. Services, Inc. v. Temic Telefunkin - RF*, 2004 WL 3016016 (Ala.Civ.App. 2004) (citing *Mass Appraisal Servs., Inc. v. Carmichael*, 404 So.2d 666, 672-73 (Ala. 1981)). In which case, the Court may consider the collateral matter "both to establish a latent ambiguity in the contract and to aid in discerning the true intention of the parties to the contract in relation to that ambiguity." *Id*. As the Alabama Supreme Court has held, "[t]he threshold issue--whether or not the contract is ambiguous--is itself a question of law. In answering this threshold question, the trial court may consider extrinsic evidence in order to determine whether there is a latent ambiguity arising from some collateral matter outside the writing." *Brown Mech. Contractors, Inc. v. Centennial Ins. Co.*, 431 So.2d 932, 942 (Ala.1983). If the court determines that a contract is ambiguous, "it must employ established rules of contract construction to resolve the ambiguity." *University Federal Credit Union v. Grayson*, 878 So.2d 280, 292 (Ala. 2003). However, "if the trial court determines that there is no ambiguity, it must determine the force and effect of the terms of the contract as a matter of law." *Id*. Generally, once a court finds that a contract is unambiguous, it can not proceed to further examine any parol or extrinsic evidence. *Rime-Shatten Dev. Co.*, 569 So.2d at 335.

### *Uter's Claim of Breach of Contract against Peacock*

Uter's Complaint alleges that Peacock violated their agreement because she failed to provide the required accounting. (Uter Compl. at ¶ 20). However, in order to sustain such a claim, the contracts must place the burden or duty to obtain the accounting on Peacock. Uter acknowledges that the language of the agreement literally calls for him to deliver the accounting report, however, he states, this provision must be analyzed in light of the fact that Mr. Uter could provide nothing to facilitate this accounting. (Uter Resp. Mot. Summ. J., Doc. 135, p. 12). He alleges that the circumstances surrounding the drafting of the agreements and his relationship with Ms. Peacock create a latent ambiguity in the contract. *Id*. Therefore, the Court may examine extrinsic evidence to determine the threshold issue of whether the contracts were indeed ambiguous.

To support his claim, Uter states that the accounting provided for in the July 10 and July 16 agreements actually began on June 1, 2003. *Id*. at 8. Also on that date, as the parties' personal relationship deteriorated, Peacock allegedly locked him out of his home and denied him access from all of the parties' financial records. *Id*. "It was against this background the parties' lawyers drafted the July 10 agreement and the July 16 Supplement." *Id*. at 9. He claims, therefore, though the language of the agreements clearly puts the burden on him to obtain the accounting, a latent ambiguity as to this obligation exists. *Id*. at 12. The Court disagrees.

The July 10 agreement clearly places the onus on Uter to produce the accounting reports to rebut Peacock's claim to the $250,000.00 when it states, "above shall be paid to Peacock no later than July 23, 2003, unless prior to then *Uter shall deliver* a written report from a local certified public accounting firm." (July 10 Agreement at ¶2) (emphasis added). Furthermore, the July 16 agreement does nothing to shift this burden. Rather, it only prevents her from foreclosing on the mortgage until 15 days after a review and

certification is presented by the accountants. (July 16 Supplement at ¶ C). Though it could have been in her best interest to assist in a speedy completion of the accounting once Uter presented the mortgage, such a situation never arose.

Further supporting that Uter was the party responsible for the completion of the accounting is the language at the end of paragraph C in the July 16 agreement. The agreement states, "[p]rovided in all events if the dispute is not otherwise resolved by July 16, 2004, the mortgage of $250,000.00, together with interest at the rate of 5% per year, shall become due and payable at such time." It is nonsensical that, if the burden was on Peacock, Uter could mortgage the property to Peacock and she could wait out the year without obtaining the accounting and then the property would become due and payable in full to her with interest. Rather, that particular clause only makes sense if Uter has the burden. It acts as a prevention from Uter delaying redemption of the mortgage and completion of the accounting to stall Peacock's entitlement to foreclosure. Such delay would ultimately become futile as she becomes fully entitled after one year in any event.

Uter had full knowledge of his relationship with Peacock and his own lack of financial documentation. At the time of the July 10 and July 16 agreements, he had already been locked out of the Ono Island home and was aware of her alleged refusal to take action in the business dealings of their shared LLCs. Nevertheless, Uter agreed to and signed both the July 10 agreement and the July 16 supplement. In light of the clear language and obvious construction of the contracts and Uter's full appreciation of the circumstances surrounding the terms, Uter's contentions that the agreements were ambiguous as to which party had the burden of procuring the accounting certification is unpersuasive to this Court.

Therefore, the Court finds that the portion of Peacock's Motion (Doc. 89) for Summary Judgment addressing Uter's claim of Breach of Contract is **due to be GRANTED**.

*Peacock's Counterclaim of Breach of Contract against Uter*

In the instant case, Peacock simply asserts that Uter breached the agreements by not redeeming and mortgaging the County Road 12 Property to her on or before July 23, 2003. (Peacock's Br. Supp. Mot. Summ. J. at 7-8). In fact, Uter did not redeem the property until approximately a year later; at which point he mortgaged it to another individual. (*See* Uter Dep., p. 17). Peacock also bases her claim on the provision in paragraph C of the July 16 supplement that makes the mortgage due and payable by July 16, 2004 if the dispute is not resolved by that time.

Uter rebuts that performance of accounting was a condition precedent to the delivery of the $250,000. (Uter Resp. Mot. Summ. J. at 9). He states the accounting had already been arranged before the agreement was signed and Peacock participated in the accounting notwithstanding his failure to deliver the $250,000, therefore, his failure to timely perform under the contract does not put him in breach. *Id*. Again, the Court disagrees with Uter's conclusions.

The contract clearly states that Uter must redeem the County Road 12 Property and either foreclose on it and deposit $250,000 with the escrow agent or mortgage it to Peacock in the amount of $250,000 on or before July 23, 2003. Though, according to the agreements, Peacock was not entitled to the $250,000 or able to foreclose on the mortgage prior to the accounting being completed, Uter was still obligated to redeem the County Road 12 Property before July 23, 2003. The accounting was not a condition precedent to Uter fulfilling his obligation to redeem and either foreclose and deposit the money or mortgage the property. Completion of the accounting was only a condition precedent to Peacock actually being entitled to the money or able to foreclose on the property herself before July 16, 2004. Therefore, when Uter failed to satisfy his obligation under the agreements to either deposit $250,000 with the Escrow Agent or mortgage the County Road 12 Property to Peacock on or before July 23, 2003, he

was in breach.

Uter submits, however, that the fact the accounting had been arranged prior to the drafting of the agreements supports his claim that it was a condition precedent to his duty to redeem. (Uter Resp. Mot. Summ. J. at 9). The clear language of the contract evidences that this is not the case. Simply because the accounting was initiated prior to the agreements being drafted does not alter the unambiguous requirements contained in those agreements. Regardless of when the accounting began, Uter was required to redeem the property on or before July 23, 2003.

Uter further contends that Peacock assented to his breach by continuing the accounting for some time after the date of performance and never issuing a "drop-dead notice" cancelling or rescinding the deal. The Court disagrees. The flaw in this reasoning is the assumption that completion of the accounting was Peacock's obligation under the agreements. As this Court has already found, neither agreement, however, puts such a responsibility on her.

Under the July 16 agreement, the two parties acknowledged a partial satisfaction, by both sides, of the July 10 agreement. Uter paid Peacock $260,000, granted the release pursuant to 1(c) and reaffirmed the indemnity obligation under 1(f). In consideration for the completion of these portions of the original July 10 contract, Peacock assigned her membership interest in LMUI, LLC to Uter. However, Peacock retained her interests in LMM, LLC and Hampton Oaks, LLC, as well as the release contemplated in paragraph 1(e) of the July 10 contract. Peacock withheld these rights as new consideration for Uter's performance of paragraphs 1(d), (g), and (h) of the July 10 agreement. Paragraphs C, D and E of the July 16 agreement simply outline how Uter can fulfill the obligations he originally contracted for in the July 10 agreement. The Court finds the only obligations Peacock had under the two contracts were to present her membership interests in LMM, LLC and Hampton Oaks, LLC and

to release Uter from any claims she may have pursuant to paragraph 1(e) of the July 10 agreement. However, these obligations were not due unless Uter first performed his obligations on or before July 23, 2003.  (*See* July 16 Agreement ¶ B).

Peacock's participation in the accounting for some time after the date of performance had passed does not amount to an acquiescence for Uter's breach.  The accounting was not an obligation of Peacock's under the contract; therefore, did not amount to a continuance of her performance under the contract. Peacock never fulfilled, nor did she have to fulfill, any of her obligations under the July 16 agreement.  She did not present her remaining interest in LMM, LLC or Hampton Oaks, LLC nor did she release Uter from any claims.  Therefore, Uter's argument that Peacock acquiesced to his breach by continuing to perform her obligations under the contract is unpersuasive.

The Court finds, under the July 10 and July 16 agreements, Uter had the duty to mortgage the County Road 12 Property for $250,000 to Peacock on or before July 23, 2003.  Upon his presentation of such mortgage, he was then entitled to Peacock's interests in LMM, LLC and Hampton Oaks, LLC, as well as release from Peacock's claims against him.  Under the agreements, Uter was also given the opportunity to reduce the amount he owed Peacock if he could substantiate his claims that funds belonging to him or to one or more of the LLC's had been diverted for Peacock's personal use.  However, the burden was on Uter to support these assertions via the prescribed accounting.  In any event, if the dispute was not otherwise resolved by July 16, 2004 the mortgage of $250,000, together with interest at the rate of 5% per year, would become due and payable.  Because Uter did not fulfill his obligations under the agreements, Summary Judgment on Peacock's claims that Uter breached the July 10 and July 16 is **due to be GRANTED** in her favor.

### *Uter's Claim of Fraud*

Uter alleges as Count II of his Complaint that Peacock committed fraud when she represented to him that she would grant the accountants access to all relevant financial records. (Uter Compl. ¶27). Uter claims that Peacock knew these representations were false and that he relied on them to his detriment. *Id.* at ¶28. Peacock, however, submits that the burden of performing an accounting, pursuant to the language of the contract, was on Uter. (Peacock Br. Supp. Mot. Summ. J., p.10). The Court recognizes that the burden is on the movant to demonstrate the absence of evidence to support the nonmoving party's case. *Four Parcels of Real Property*, 941 F.2d at 1437-38. The Court is also aware that it is to find "all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences ... in his favor." *Id.* at 1428 (internal quotations and citations omitted). However, "the moving party may discharge its "initial responsibility" by showing that there is an absence of evidence to support the nonmoving party's case. *Id.*

The agreements are clear that the burden to provide the accounting was on Uter and he has submitted nothing to evidence that Peacock represented otherwise. The Court finds that the terms of the agreements placing the burden of obtaining the accounting on Uter are an accurate expression of the intent of the parties at the time the contract was signed. Therefore, based on the language of the contract and the Uter's absence of rebuttal evidence, the Court finds that there is no dispute of material fact regarding any representations made by Peacock about the proposed accounting. Therefore, Summary Judgment on Uter's claim of Fraud is **due to be GRANTED** in favor of Peacock.

### *Peacock's Counterclaims/Affirmative Defenses of Indemnification and Release*

Peacock alleges, both as an affirmative defense to Uter's claims and as a separate claim for damages, that the indemnification and release clauses contained in the agreements protect her from liability

in this action brought by Uter. First, the Court will not address Peacock's affirmative defense of release, as it has already found that she is not liable for Uter's claims on other grounds. However, Peacock further alleges that Uter initiated this action in contravention of the agreements' indemnification clause and, thus, is liable for attorney's fees, litigation expenses and costs. (Peacock Countercl. at ¶37). The Court disagrees. The Court finds that the indemnification clause contained in the agreements does not establish that Uter will indemnify Peacock for any losses sustained as a result of the claims Uter brings for Fraud and Breach of Contract on those same agreements.

Typically, Alabama adheres to the "American Rule" that each party bears the responsibility of paying its own fees. *Alabama Alcoholic Beverage Control Bd. v. City of Pelham*, 855 So. 2d 1070, 1083 (Ala. 2003). There are, however, exceptions to this rule, including when such fees are provided for by contract. *Id*. The Court recognizes the ability of parties to include attorneys fees in indemnity clauses, however, such provisions will be strictly construed so as to not mean something the parties do not intend. *See Walker v. Bailey*, 686 So.2d 304, 307 (Ala. Civ. App. 1996)("contract of indemnification should be construed, as contracts in general are construed, to give effect to the intention of the parties, which means that it cannot be extended to losses or damages neither expressly within its terms, nor of such character that it may reasonably be inferred that the parties intended to covenant against them.") (quoting *Pyle v. Pizitz*, 110 So. 822, 824 (1926)).[5]

---

[5] In a similar, though non-binding, case the New York Court of Appeals held, "a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise." *Hooper Assoc., Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989); *See also Oscar Gruss & Son, Inc. v. Hollander,* 337 F.3d 186, 199 (2nd Cir. 2003).

Paragraph 1(f) of the July 10 agreement acknowledges that Uter "shall indemnify and hold harmless Peacock ... from any and all claims, liability, damages, actions, causes of actions, debts, fines and expenses, including attorney fees, that may be suffered as a result of any action or inaction of Uter or the LLC's or any existing or future debt or obligation of Uter or the LLC's ... ." The Court finds that this language does not permit a construction which would indemnify Peacock for attorneys' fees incurred pursuant to a claim brought against her, by Uter, regarding the execution and obligations within the same contract. The contractual terms in question are a clear expression of the parties' intent that Peacock was only to be indemnified from claims, liability, actions, etc. made by *third parties* based on the actions or inaction of Uter or the LLC's or any of their debts or obligations. Summary Judgment as to Peacock's claim for attorney's fees, costs and expenses under the indemnification clause is **due to be DENIED** and the claim is **due to be DISMISSED**.

## CONCLUSION

Based on the facts and analysis above, the Court finds that Defendant/Counterclaim Plaintiff Peacock's Motion (Doc. 89) for Summary Judgment is **hereby GRANTED IN PART and DENIED IN PART**. As to Uter's claims of Breach of Contract and Fraud, Peacock's Motion for Summary Judgment is **hereby GRANTED**. Likewise, Summary Judgment is **GRANTED** for Peacock's claim of Breach of Contract. However, Peacock's Motion of Summary Judgment as to her own claim of Indemnification is **hereby DENIED** and the claim is **hereby DISMISSED**.

**So ORDERED**, this 1st day of August, 2005.

                                                                                  s/ W. B. Hand                
                                                                         SENIOR DISTRICT JUDGE